FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 03, 2023

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

JOHN G.,[1]

        Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,

        Defendant.

No.  1:22-cv-3002-EFS

**ORDER GRANTING PLAINTIFF'S SUMMARY-JUDGMENT MOTION, DENYING DEFENDANT'S SUMMARY-JUDGMENT MOTION, REVERSING THE ALJ DECISION, AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff John G. appeals the denial of benefits by the Administrative Law Judge (ALJ).  Because the ALJ's decision does not reflect that he was aware Plaintiff was claiming disability as to only a closed period, and because the ALJ failed to provide adequate reasons supported by substantial evidence for assessing Plaintiff as capable of performing medium-level work, the ALJ consequentially erred.  The Court therefore reverses the ALJ decision and remands this matter for further proceedings.

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 1

**I.      Five-Step Disability Determination**

A five-step evaluation determines whether a claimant is disabled.[2] Step one assesses whether the claimant is engaged in substantial gainful activity.[3] Step two assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limit the claimant's physical or mental ability to do basic work activities.[4] Step three compares the claimant's impairment or combination of impairments to several recognized by the Commissioner to be so severe as to preclude substantial gainful activity.[5] Step four assesses whether an impairment prevents the claimant from performing work he performed in the past by determining the claimant's residual functional capacity (RFC).[6] Step five assesses whether the claimant can perform other substantial gainful work—work that exists in significant numbers in the national economy—considering the claimant's RFC, age, education, and work experience.[7]

---

[2] 20 C.F.R. §§ 404.1520(a), 416.920(a).

[3] *Id.* §§ 404.1520(a)(4)(i), (b), 416.920(a)(4)(i), (b).

[4] *Id.* §§ 404.1520(a)(4)(ii), (c), 416.920(a)(4)(ii), (c).

[5] *Id.* §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d).

[6] *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

[7] *Id.* §§ 404.1520(a)(4)(v), (g), 416.920(a)(4)(v), (g).

## II. Background

In April 2017, Plaintiff filed applications for benefits under Title 2 and Title 16, claiming disability based on a back injury, a bulging disc, left-shoulder pain, neck pain, and a testicle injury.[8] Plaintiff initially alleged an onset date of September 1, 2013, but he would ultimately amend his claim to a closed period of disability from January 1, 2015, through March 26, 2017.[9] After the agency denied his applications initially and on reconsideration, Plaintiff requested a hearing before an ALJ.

### A. 2020 Hearing & ALJ Decision

In February 2020, ALJ Timothy Mangrum held a hearing at which Plaintiff and a vocational expert testified.[10] At this hearing, Plaintiff amended his claim to cover a closed period from January 1, 2015, through March 14, 2018.[11]

#### 1. Hearing Testimony

Plaintiff reported working from 2009 through 2013 as semi-truck driver hauling scrap metal long distances on flat-bed trucks, which he described involving "pretty physical stuff."[12] In May 2013, Plaintiff fell while on the job and injured his

---

[8] AR 294–302, 417.

[9] AR 58.

[10] AR 35–70.

[11] AR 40.

[12] AR 42.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 3

left testicle.  He left his job shortly thereafter due to the resulting pain and swelling, saying it interfered with his ability to operate the truck's clutch to shift gears.  Plaintiff testified that he continued for a long time to suffer from severe, constant groin pain and left-leg problems, with it taking several years for his pain to improve to the point where he could work again.

In March 2018, Plaintiff started a new job driving for a different employer. He explained that this new job was significantly less physically demanding than his prior truck-driving job because he only does local deliveries and receives other accommodations from his employers.

When the ALJ asked the vocational expert to categorize Plaintiff's past relevant work, the vocational expert said, "Tractor trailer truck driver, DOT is 904.383-010, the SVP: 4, strength is medium.  And I believe that is all."[13]  The vocational expert also testified that being limited to a light exertional level would preclude that past work.

2. ALJ Decision & Remand by Appeals Council

In February 2020, the ALJ issued a decision in which he assessed Plaintiff as capable of performing medium work, so long as the job duties did not include excessive vibrations or more than occasionally climbing and stooping.[14]  The ALJ

---

[13] AR 50.

[14] AR 129–40.

therefore found Plaintiff capable of performing his past relevant work as a truck driver, and the ALJ denied disability on that basis.

The Appeals Council remanded the matter back to the ALJ, citing a lack of mental-impairment analysis.[15]

**B.     2021 Hearing & ALJ Decision**

In July 2021, the same ALJ held a second hearing and received further testimony from Plaintiff and a different vocational expert.[16]  Plaintiff once more amended his claim, this time to a closed period of January 1, 2015, through March 26, 2017.[17]

  1.     Hearing Testimony

At the hearing, Plaintiff again spoke about his left-testicle injury and slow recovery, estimating his pain had improved by about 80% since 2013.[18]

When asked to classify Plaintiff's past relevant work, the vocational expert said, "I would put it under tractor-trailer truck driver, 904.383-01[0], is medium work with an SVP of 4, semi-skilled.  He meets that SVP, did that for at least six

---

[15] AR 146–50.

[16] AR 55–71.

[17] AR 58.

[18] AR 61–67.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 5

years in the record. And as performed it was also medium."[19] The expert further explained that none of the associated skills would transfer down to a lower exertion level, saying, "His driving would be specific to a medium level."[20]

2. Closing Exchange by the ALJ and Counsel

Immediately after confirming that Plaintiff's past relevant work as a truck driver was specific to a medium exertional level, the ALJ engaged in the following exchange with Plaintiff's counsel.

> ALJ: . . . . Mr. Tree, I'm thinking that during this closed period [Plaintiff] was at best a light, kind of went kind of back and forth between a sedentary and a light. And given his age I think we've got a resolution there. Any thoughts?
> ATTY: Okay. Yeah, I agree. Yeah, I agree with those thoughts, yeah.
> ALJ: Okay. All right.
> ATTY: I won't fight you. Yeah.
> ALJ: You're not going to contradict me?
> ATTY: No, not this time. I'll save it for next time.
> ALJ: All right.[21]

The ALJ then thanked and dismissed the vocational expert and ended the hearing without receiving further evidence or argument.

---

[19] AR 68. The hearing transcript states, "904.383-018," but context, and the lack of any DOT entries under that number, show this to be a scrivener's error.

[20] AR 68.

[21] AR 68–69.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 6

3. <u>ALJ Decision</u>

In late July 2021, the ALJ issued a written decision denying Plaintiff's disability applications.[22] The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms. However, relying largely on his finding that Plaintiff returned to a medium-level truck driving job in 2018, the ALJ found Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms "are not entirely consistent with the medical evidence and other evidence in the record."[23] The ALJ similarly relied heavily on Plaintiff's new employment when assessing the persuasiveness of the medical-opinion evidence.

As to the sequential disability analysis, the ALJ found as follows.

- Plaintiff met the insured status requirements through December 31, 2021.
- Step one: Plaintiff has engaged in substantial gainful activity since March 14, 2018, but there was a continuous 12-month period during which he did not engage in substantial gainful activity.
- Step two: Plaintiff had the following medically determinable severe impairments: degenerative disc disease; obesity; and history of left testicular orchialgia.

---

[22] AR 15–28.

[23] AR 22.

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 7

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.
- RFC: Plaintiff had the RFC to perform medium work, subject to the following additional limitations:
  - he can occasionally climb ramps, stairs, ladders, ropes, and scaffolds;
  - he can occasionally stoop; and
  - he should avoid concentrated exposure to vibrations.
- Step four: Plaintiff could perform past relevant work as a tractor-trailer truck driver.

Determining Plaintiff not disabled at step four, the ALJ did not proceed to step five of the analysis.

Plaintiff requested review of the ALJ's decision by the Appeals Council, which denied review.[24] Plaintiff timely appealed to the Court.[25]

### III. Standard of Review

A district court's review of the Commissioner's final decision is limited.[26] The Commissioner's decision is set aside "only if it is not supported by substantial

---

[24] AR 1–6.

[25] *See* 20 C.F.R. §§ 404.981, 422.201.

[26] 42 U.S.C. § 405(g).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 8

evidence or is based on legal error."[27]  Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[28]  Moreover, because it is the role of the ALJ—and not the Court—to weigh conflicting evidence, the Court upholds the ALJ's findings "if they are supported by inferences reasonably drawn from the record."[29]  The Court considers the entire record, and the Court may not reverse an ALJ decision due an error that "is inconsequential to the ultimate nondisability determination."[30]

## IV.   Analysis

On appeal, Plaintiff asserts the ALJ erred by (1) reversing from his oral statements indicating Plaintiff's claim would be approved, thereby violating Plaintiff's procedural due-process rights, (2) failing to address the closed-period nature of Plaintiff's claim, (3) improperly assessing Plaintiff's new job as medium work, (4) improperly discounting Plaintiff's symptom reports, and (5) improperly discounting certain medical opinions.[31]  As set forth below, the Court agrees the ALJ reversibly erred in finding Plaintiff's new job to be medium-level work without

---

[27] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).

[28] *Id.* at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[29] *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

[30] *Id.* at 1115. *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007).

[31] *See generally* ECF No. 13.

substantial supporting evidence in the record. Further, nearly every aspect of the ALJ's decision relied on that unsupported finding. Thus, the Court remands this matter for the Commissioner to conduct the disability analysis anew, and the Court need not address Plaintiff's remaining arguments.

### A.     Claim for a Closed Period

Although Plaintiff requested a closed period of disability from January 1, 2015, through March 26, 2017, the ALJ's decision makes no reference to this closed period. Rather, the ALJ stated, "The claimant is alleging disability since September 1, 2013."[32] Still, after finding Plaintiff had engaged in substantial gainful activity since March 14, 2018, the ALJ also found "there has been a continuous 12-month period(s) during which the claimant did not engage in substantial gainful activity."[33] And the ALJ stated that the rest of his findings addressed that period.

Though the ALJ said his findings applied to "the period(s) the claimant did not engage in substantial gainful activity," the ALJ never actually defined that period.[34] Further, even if this meant the ALJ's findings were effectively limited to the same period as Plaintiff requested, the ALJ's decision leaves unclear whether he believed Plaintiff was *alleging* disability outside that period. If so, this

---

[32] AR 15.

[33] AR 18.

[34] AR 18.

1    misperception was likely to affect his analysis, particularly in relation to Plaintiff's

2    credibility.  Moreover, any misconception about the claimed period would only add

3    to the problems that arise when an ALJ denies disability based on the claimant's

4    post-closed-period employment.

5    **B.    Post-Period Employment: Plaintiff establishes consequential error.**

6          The ALJ's use of Plaintiff's post-period employment presents at least two

7    problems.  First, doing so is arguably contrary to Ninth Circuit precedent.  Second,

8    but more importantly, the record lacks sufficient evidence to reasonably conclude

9    that Plaintiff's new job constituted medium-level work.

10       1.    <u>Reliance on Post-Period Employment, Generally</u>

> [A]n applicant's employment that begins after the end of the period for which the applicant is seeking disability benefits, unless wholly inconsistent with the claimed disability, is not a "specific and legitimate" reason for rejecting the opinions of examining physicians that an individual is disabled.  It follows that such a record of work does not supply the more demanding "clear and convincing" reason required to reject the medically supported testimony of an applicant.

15   *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 925 (9th Cir. 2002).

16         In this case, the ALJ's decision relied heavily on Plaintiff's new employment

17   (starting in 2018)—and its categorization as medium work—to support the ALJ's

18   findings regarding the medical opinions and Plaintiff's symptom reports.  Indeed,

19   nearly every aspect of the ALJ's analysis includes reference to Plaintiff's 2018

employment.[35]  Unlike in *Moore*, however, the ALJ here repeatedly paired Plaintiff's return to work with findings that Plaintiff's symptoms had not shown any significant improvement prior to his 2018 employment.[36]  For example, in assessing the medical opinion of examining physician William Drenguis, MD, the ALJ stated,

> Dr. Drenguis's opinion is also inconsistent with the claimant's activities.  Less than 12 months after Dr. Drenguis's opinion, the claimant, despite the lack of any objective improvement in his back and testicular pain, would return to full-time medium work as a tractor trailer truck driver in March 2018.  This suggests that he could have performed medium exertional work prior to March 2018 as well.[37]

Still, even assuming arguendo it would be "wholly inconsistent with the claimed disability" for Plaintiff to return to medium work in 2018 absent evidence

---

[35] *See* AR 18–24 (referencing Plaintiff's 2018 employment while assessing Plaintiff's left-shoulder injury, right-ankle sprain, mental capabilities under "paragraph B", testicular pain, hernia, back pain, and obesity); AR 25–27 (same while assessing medical-opinion persuasiveness).

[36] *See* AR 18–27.

[37] AR 26. *See also* AR 25–26 (including substantively identical statements in support of discounting two opinions by treating ARNPs and finding persuasive two opinions by reviewing state-agency physicians).

ORDER RULING ON CROSS SUMMARY-JUDGMENT MOTIONS - 12

of objective improvement, the record does not establish that Plaintiff's 2018 job involved medium work.[38]

### 2. Differences Between Plaintiff's Old Work & New Work

Both vocational experts categorized Plaintiff's past relevant work (ending in 2013) as falling under DOT 904.383-010 (tractor-trailer truck driver).[39] But neither of them was asked to give any opinion regarding Plaintiff's work from 2018 onward. And, at the 2020 hearing, Plaintiff explained that his new work as a truck driver included accommodations that were absent in his prior work.

Referring to his truck-driving work in 2013 and before, Plaintiff said, "I used to drive a flatbed, which is a lot more strenuous and stuff."[40] He testified that "there was no light work. . . . It was all flatbed, all scrap metal."[41] In his previously submitted work-history report, Plaintiff also explained that his job included securing loads on flatbed trucks with straps and tarps.[42] And Plaintiff's testimony described how his old job required putting on chains to go over the mountains.

Plaintiff contrasted this with his new work, describing how he received several accommodations from his new employer. Plaintiff testified, "I'm able to do

---

[38] *See Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 925 (9th Cir. 2002).

[39] AR 50, 68.

[40] AR 46.

[41] AR 47.

[42] AR 426.

this particular job. But they really work with me. And they needed somebody who could do local deliveries and things, and they're [a] really good family-owned outfit company."[43] He said, "they basically gave me pretty easy stuff to do"—an example being that they limit his wintertime deliveries to "strictly Yakima" so that he does not have to deal with chains.[44] Plaintiff also described improvements in the truck he drives and the trailers he hauls, explaining that he now drives an automatic transmission, which helps because of his left-leg problems.[45] And he indicated that he now hauls van-type trailers instead of flatbeds, saying, "At least with a van all you have to do is open the back doors, back into the dock."[46]

Given Plaintiff's testimony, it is unclear whether his 2018 work would still fall under DOT 904.383-010 (tractor-trailer truck driver).[47] "It is understood that some individual jobs may require somewhat more or less exertion than the DOT

---

[43] AR 46.

[44] AR 48.

[45] AR 43.

[46] AR 47.

[47] *Cf. Silva v. Colvin*, No. EDCV 13-0541-JEM, 2013 WL 6859263, at *8 (C.D. Cal. Dec. 30, 2013) ("[T]he VE testified that, although there is not a DOT category for it, there are a large number of *light* truck driver jobs, . . . data she got from a publication called Employment Statistics Quarterly." (emphasis added)).

description."[48]  "Finding that a claimant has the capacity to do past relevant work on the basis of a generic occupational classification of the work is likely to be fallacious and unsupportable."[49]  As such, the ALJ erred by failing to address Plaintiff's testimony.  Neither meaningful explanation nor substantial evidence supports the ALJ's finding that Plaintiff's 2018 job would be categorized as medium-level work.[50]

Because the ALJ's assessment of Plaintiff's 2018 work impacted nearly every aspect of the ALJ's sequential analysis, the Court does not analyze Plaintiff's remaining claims.  On remand, the ALJ shall conduct anew the disability evaluation, beginning at step two.

---

[48] SSR 82-61 (1982).

[49] *Id.*

[50] *See* AR 18 (citing DOT 904.383-010 in assessing physical requirements of Plaintiff's 2018 work). *Cf. also* DOT 904.383-010 Tractor-trailer-truck Driver (indicating the work includes, in relevant part, driving tractor-trailer combinations, "*usually* long distances," inspecting the truck, and "*May* assist workers in loading and unloading truck." (emphasis added)); *id.* ("STRENGTH: Medium Work . . . . Physical demand requirements are in excess of those for Light Work.").

## C. Remand for Further Proceedings

Because the record does not clearly establish that Plaintiff was disabled during the closed period, the ALJ's error requires a remand for further proceedings.[51] On remand, the ALJ's decision shall clearly articulate the period of disability being claimed and what effect, if any, this has on the sequential analysis. If the ALJ again uses Plaintiff's post-period employment to discount any evidence, the ALJ shall make specific findings regarding Plaintiff's post-period employment and meaningfully explain how such findings undermine the evidence being discounted.[52] To this end, the Court strongly recommends that the ALJ obtain vocational-expert testimony regarding Plaintiff's post-period employment.

## V. Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—the sequential process.

Accordingly, **IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **GRANTED**.

---

[51] *See Leon v. Berryhill*, 800 F.3d 1041, 1045 (9th Cir. 2017); *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014); *Treichler v. Comm'r of Social Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

[52] *See Garrison*, 759 F.3d at 1010.

2. The Commissioner's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

3. The Clerk's Office shall enter **JUDGMENT** in favor of **Plaintiff**.

4. The decision of the ALJ is **REVERSED**, and this matter is **REMANDED** to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

5. The case shall be **CLOSED**.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 3rd day of March 2023.

*Edward F. Shea*
———————————————
EDWARD F. SHEA
Senior United States District Judge